UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KITA HURVITZ,<br><br>           Plaintiff,<br><br>     v.<br><br>HARTFORD INSURANCE COMPANY OF THE MIDWEST,<br><br>           Defendant. | Case No. 2:21-cv-00617-RFB-DJA<br><br>**ORDER** |

Before the Court is Defendant Hartford Insurance Company of the Midwest's Motion for Summary Judgement and Motion for Partial Judgment on the Pleadings. ECF Nos. 73, 74. For the following reasons, the Court grants the Motion for Summary Judgment.

**I.     PROCEDURAL HISTORY**

Plaintiff Kita Hurvitz filed this action against Hartford on December 21, 2020, seeking damages for "breach of contract." ECF No. 1-1. The case was removed from state court by Defendant on April 14, 2021. ECF No. 1. On May 20, 2021, Plaintiff filed a motion for declaratory relief. ECF No. 9. A day later, Defendants answered the complaint. ECF No. 10. In their answer, Defendants brought a counterclaim seeking declaratory relief that the claim was fully and finally resolved by the payment of $180,000 dollars on January 7, 2019.

On July 6, 2021, Defendants both responded to the motion for declaratory relief and filed a motion for summary judgment. ECF Nos. 16 and 18. On July 14, 2021, a stipulation to stay discovery pending Plaintiff's motion for declaratory relief and Defendant's motion for summary judgment was granted. ECF No. 20. Defendant's motion for summary judgment was fully briefed by August 9, 2021. ECF Nos. 22, 24.

On March 7, 2022, the Court held a motion hearing and denied Plaintiff's motion for declaratory relief, ECF No. 9, and denied without prejudice Defendant's motion for summary

judgment, ECF No. 18, lifted the stay on discovery, and ordered the parties to submit a proposed discovery plan to Magistrate Judge Albregts. ECF No. 26. The parties submitted their proposed discovery plan, which was granted by Judge Albregts on April 21, 2022. ECF No. 28.

On September 23, 2022, the parties filed a stipulation to stay the case for 90 days. ECF No. 30. On October 27, 2022, Plaintiff's attorney, James J. Ream, filed a motion to withdraw. ECF No. 32. Judge Albregts granted the motion after holding a hearing on November 15, 2022. ECF No. 43. On January 12, 2023, Plaintiff filed a motion for a 90-extension to stay. ECF No. 45. This was fully briefed by April 24. ECF Nos. 47, 50. The parties filed an additional response and reply by May 10, 2023. ECF Nos. 51, 53. On the same day, Plaintiff filed a motion to amend complaint. ECF No. 54. On May 12, 2023, Judge Albregts denied Plaintiff's motion without prejudice. ECF No. 55. On August 14, Plaintiff filed a motion to request the Court to appoint legal representation and reverse the motion to withdraw of her prior attorney, James J. Ream. ECF No. 57. Plaintiff also filed a motion to stay case. ECF No. 58. Defendant responded. ECF No. 59.

On August 18, 2023, the Court held a motion hearing and granted the parties' stipulation to stay, ECF No. 30, *nunc pro tunc*, granted Plaintiff's motion to stay, ECF No. 45, and provided that the stay would be lifted on November 17, 2023, thus denying Plaintiff's last motion to stay, ECF No. 58, as moot. ECF No. 60. The parties were ordered to file their proposed discovery plan by November 17, 2023. Id.

The parties filed their proposed discovery plan on November 8. ECF No. 61. It was approved the next day. ECF No. 62. On November 15, the Court issued a Minute Order granting Plaintiff's request to appoint counsel by referring her to the Court's *pro bono* program. ECF No. 63. The Court denied her request to reverse the motion to withdraw by her prior attorney. Id. On May 31, Defendant filed two motions to compel compliance with a subpoena, but later withdrew them. ECF Nos. 69, 70, 71, 72.

On June 14, 2024, Defendant filed the instant motion for summary judgment and motion for partial judgment on the pleadings. ECF Nos. 73, 74. On July 5, 2024, Plaintiff filed a motion to extend time to respond. ECF No. 78. She then filed a notice of non-opposition to Defendant's motion for partial judgment on the pleadings. ECF No. 79. Defendant then responded to the motion

to extend time and Plaintiff replied. ECF Nos. 80, 81. The Court later granted the motion. ECF No. 82. Plaintiff filed her response to the motion for summary judgment on September 9. ECF No. 83. Defendant filed a motion to extend time to reply, which was granted. ECF No. 84, 85. Defendant filed their Reply on September 30, 2024. ECF No. 86. Defendant also filed a supplement on October 8. ECF No. 87. On November 7, the Court set a hearing on these motions. ECF No. 88. On November 7, counsel appeared on behalf of Plaintiff. ECF Nos. 89, 90. On November 25, the Court appointed pro bono counsel for Plaintiff and held a hearing on the pending motions. ECF Nos. 91, 92.

The Court's Order follows.

## II. FACTUAL BACKGROUND

The Court makes the following findings of undisputed and disputed facts.

### A. Undisputed Facts

#### i. *Plaintiff's Medical Treatment*

On or about February 24, 2015, Plaintiff was involved in an automobile accident. At the time of the accident, she was insured under a personal automobile policy issued by Defendant. The policy included $500,000 in underinsured motorist ("UIM") benefits, plus a $1,000,000 UIM umbrella. On February 25, Plaintiff sought a medical evaluation from her primary care physician, Dr. Steven Holper, for injuries related to the accident. On March 12, 2015, she raised issues with her right knee to Dr. Holper. On March 17, 2015, she was reevaluated by Dr. Holper, at which point she again complained of significant pain in her right knee. Plaintiff then received an injection in her right knee. On April 8, 2015, Plaintiff was reevaluated by Dr. Holper. She reported that the benefit of her knee injection was "short lived." Dr. Holper's evaluation revealed the right knee demonstrated tenderness to palpation. Dr. Holper opined that Plaintiff required an MRI of the right knee and additional physical therapy treatments.

On April 14, 2015, Plaintiff underwent an MRI of the right knee at Diagnostic Imaging of Southern Nevada. The MRI was negative for ligamentous or tendinous tearing but noted some degenerative changes. On April 22, Plaintiff was reevaluated by Dr. Holper for complaints of headaches, cervical spine pain, lumbar spine pain, left wrist pain, and right knee pain.

On April 30, Plaintiff was evaluated at Matt Smith Physical Therapy for multiple symptomatic areas including her right knee. Between April 30, 2015 and July 1, 2015 Plaintiff received over 20 physical therapy treatments for the right knee at this office.

On July 7, Plaintiff was reevaluated by Dr. Holper for complaints of right knee pain and left forearm pain. On August 4, Plaintiff was reevaluated by Dr. Holper. She reported she was using a TENS unit for her right knee. Dr. Holper injected Plaintiff's right knee. Plaintiff admitted the injection she received from Dr. Holper only temporarily resolved her pain. On September 1, Plaintiff was again reevaluated by Dr. Holper, where she once again reported continued pain in her right knee.

On November 15, 2016, Dr. Holper generated a "Final Report" documenting Plaintiff's various complaints, including those concerning her right knee. Dr. Holper opined he "would render a prognosis of poor to guarded realizing her residual complaints above described."

### ii. *Settlement Between the Parties*

On December 9, 2016, Plaintiff presented a demand for underinsured motorist benefits for injuries sustained as a result of the accident. The records presented with Plaintiff's demand included treatment for her right knee injury, including records from Dr. Holper, Diagnostic Imaging of Southern Nevada, and Matt Smith Physical Therapy. Following the demand, Defendant made a voluntary payment on the claim in the amount of $138,428. After the voluntary payment was made, Plaintiff continued to seek treatment for her right knee. On October 10, 2018, Plaintiff obtained an X-ray of her right knee due to "right knee pain."

On December 14, 2018, Plaintiff's counsel sent Defendant a fax: "Ms. Kita Hurvitz has authorized us to ask for a payment of One Hundred Eighty Thousand and No/100 (&180,000.00 USD). May we please have your response by the end of the year?"

Defendant responded by asking, "Is the proposal of $180,000, per your faxed correspondence dated 12.14.18, an attempt to resolve your client's UIM claim on a 'full and final' basis?"

Plaintiff's counsel responded to Defendant: "Yes the $180,000 is for a full and final resolution."

On December 24, 2018, Defendant's adjuster advised Plaintiff's counsel that: "I received authority to resolve Kita Hurvitz's claim for $180,000 'new money' as full and final settlement of her underinsured motorist exposure arising from her 02/24/2015 motor vehicle accident. In the event there are any outstanding Medicare conditional payment liens, or any other liens, you have again agreed to set aside sufficient funds in an escrow account to protect and/or satisfy the lien[s]. Please confirm followed by providing drafting instructions."

Plaintiff's counsel responded to Defendant: "This will confirm that my office agrees to satisfy all liens associated with this matter, including any Medicare liens. Please make the check payable to Kita Hurvitz in care of her attorney, James Ream, Esq."

On or about January 7, 2019, Plaintiff deposited the $180,000. In total, Defendant has paid UIM benefits in the amount of $318,428.79, including the full and final payment in the amount of $180,000 issued on December 26, 2018.

Less than a month after she received the $180,000 payment, Plaintiff began treatment at Nevada Orthopedic & Spine Center. During treatment, Plaintiff acknowledged her right knee pain had persisted constantly for the last four years. Further, Plaintiff informed the physicians at Nevada Orthopedic & Spine Center that her right knee pain was caused by the accident.

On or about January 6, 2020, Plaintiff, through her counsel, requested additional UIM benefits. The request acknowledges: "Ms. Hurvitz has experienced right knee problems since the time of the collision which caused her to originally submit this claim."

**B. Disputed Facts**

The parties do not dispute the facts. Instead, their dispute concerns the legal effect of the "full and final" release email.

**III.   LEGAL STANDARD**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

When considering the propriety of summary judgment, the court views all facts and draws

1 all inferences in the light most favorable to the non-moving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. Cnty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

**IV. DISCUSSION**

The Court now turns to the merits of Defendant's motion for summary judgment. The Court finds that the parties entered into a valid and enforceable contract for the "full and final" resolution of Plaintiff's claims.

**A. The Parties Entered Into A Valid Enforceable Contract**

The Court finds that the parties formed a valid and enforceable contract. The existence of a contract is a question of law. May v. Anderson, 119 P.3d 1254, 1257 (Nev. 2005); Kabil Devs. Corp. v. Mignot, 566 P.2d 505, 577 (Nev. 1977). In Nevada, a settlement agreement is subject to the principles of contract law. May, 119 P.3d at 1257; Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir. 1989) (finding that settlement agreements are private contracts, and enforceable as such). "Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration." May, 119 P.3d at 1257 (citations omitted). "A meeting of the minds exists when the parties have agreed upon the contract's essential terms." Certified Fire Prot. Inc. v. Precision Constr., 283 P.3d 250, 255 (Nev. 2012) (citations omitted).

Here, there was offer and acceptance (Defendant offered the $180,000 in return for resolving the claim and Plaintiff's counsel accepted), a meeting of the minds (mutual agreement evinced by the plain language of the emails) and consideration (the $180,000). See May, 119 P.3d at 1257. Therefore, the Court finds that the parties entered into a valid and enforceable contract for the "full and final" resolution of Plaintiff's claim.

**B. Plaintiff's Attorney Had Authority to Agree to the Settlement**

In her opposition to the motion for summary judgment, Plaintiff argues that she did not agree to the settlement, but, rather, her attorney did. "Nevada law presumes that an attorney has authority to settle his client's claim, but that presumption can be overcome by proof that the attorney did not have authority to do so." Edwards v. Babcock, 238 P.3d 808, *2 (Nev. 2008) (citation omitted); see also Waits v. Weller, 653 F.2d 1288, 1291 n.2 (9th Cir. 1981) ("[U]nder Nevada law an attorney is presumed to have authority to settle his client's claim."). Plaintiff has presented no evidence that her attorney did not have the authority to accept the $180,000 in exchange for a "full and final" resolution of her claim. Accordingly, her attorney entered into an agreement on her behalf when he accepted the $180,000 offer. Additionally, it is an undisputed fact that Plaintiff herself deposited the money.

**C. Plaintiff's Refusal to Sign a Release Does Not Render The Contract Invalid**

Next, Plaintiff argues that she refused to sign a release, rendering the agreement invalid. The Nevada Supreme Court has held that "[a] contract can be formed . . . when the parties have agreed to the material terms, even though the contract's exact language is not finalized." May, 119 P.3d at 1257.[1] Thus, "a party's refusal to later execute a release document after agreeing upon the release's essential terms does not render the settlement agreement invalid." Id. at 1256. "Which terms are essential [i.e., material] 'depends on the agreement and its context and also on the subsequent conduct of the parties, including the dispute [that] arises and the remedy sought.'" Certified Fire Prot. Inc., 283 P.3d at 255 (citations omitted).

Here, Plaintiff's counsel agreed to the essential and material terms of the agreement. Plaintiff accepted an offer of $180,000 in exchange for resolving the claim on a "full and final" basis. And, importantly, she deposited the money. Thus, Plaintiff agreed to the amount of the settlement and resolution of the claim, the two essential elements of the settlement agreement. Therefore, the fact that Plaintiff did not sign a release agreement does not render the agreement invalid.

---

[1] In fact, the original contract need not even be in writing. See Micheletti v. Fugitt, 134 P.2d 99, 104 (Nev. 1943) ("Where a complete contract was made orally, the fact that it was expected that a written contract would afterwards be signed, embodying the terms of the oral contract, does not prevent the oral contract from taking effect.").

### D. There Was No Mutual Mistake

Finally, Plaintiff argues that there was a mutual mistake of fact. Generally, a mistake of fact occurs when a person understands the facts to be other than they are. Gen. Motors v. Jackson, 900 P.2d 345, 349 (Nev. 1995) (internal citations omitted). Under Nevada law, mutual mistake occurs when both parties, at the time of contracting, share a misconception about a vital fact upon which they based their bargain. Id. (citations omitted). A unilateral mistake is not a ground for rescission unless the other party knows or has reason to know of the mistake. Id. Further, where the party bears the risk of mistake, the defense of unilateral mistake is not available. In re Irrevocable Trust Agreement of 1979, 331 P.3d 881, 885 (Nev. 2014).

Plaintiff's argument of mutual mistake fails on the law. Her argument is that there were various uncertainties at the time of the agreement. First, she argues that neither she nor Defendant knew about the extent of her knee injury. Therefore, the parties entered the agreement under a mutual mistake of fact. However, this argument fails for several reasons. First, Plaintiff knew about her knee pain. It is an undisputed fact that, as early as March 12, 2015, she was experiencing knee pain. Throughout the time period leading up to the settlement agreement, she was experiencing multiple issues, including knee pain.

Additionally, even if she did not know about the severity or extent of her knee pain, she bore that risk when she entered into the contract. If a party is aware, at the time she enters into the contract, "that [s]he has only limited knowledge with respect to the facts to which the mistake relates but treats [her] limited knowledge as sufficient," that party will bear the risk. See Restatement (Second) of Contracts § 154(b) (1981); see generally Cain v. Price, 415 P.3d 25, 28 (Nev. 2018) (relying on Restatement in resolving issues regarding terms of a settlement agreement). Plaintiff was represented by counsel during the time of the settlement agreement and the risk of future injury was foreseeable. In fact, she sought the additional $180,000 because her injuries were more severe than initially anticipated following the first payment.

Finally, Plaintiff has failed to show that her potential knee injury was a vital fact upon which Defendant relied when entering into the agreement. She presents no evidence that Defendant relied on, or formed an opinion about, Plaintiff's knee. It was one of many ailments she faced,

including headaches, cervical spine pain, lumbar spine pain, left wrist pain, left forearm pain, and a bladder condition.

Alternatively, Plaintiff argues that there was a mutual mistake concerning the scope of the agreement. Plaintiff believed the agreement only entailed resolution of claims related to her bladder and not issues related to her knee. However, there is no evidence that Defendant entered into the agreement with any belief, one way or another, about Plaintiff's knee injury. Thus, to the extent there was any mistake about contingencies or conditions that were allegedly inherent to the agreement, such as limiting it to solely her bladder injuries, it was solely the mistake of Plaintiff. Because there is no evidence that Defendant knew about Plaintiff's mistaken belief about the scope of the agreement, the unilateral mistake defense is not available.

### E. Plaintiff Waived Additional Benefits

Since the parties entered into a valid and enforceable contract, Plaintiff has waived any additional benefits pursuant to her contract for UIM benefits with Defendant. "A settlement agreement is a contract governed by general principles of contract law," and it must be construed from its "written language and enforced as written." The Power Co. v. Henry, 321 P.3d 858, 863 (Nev. 2014). When a settlement agreement's language is unambiguous, it must be enforced as written. Id.

A waiver is the intentional relinquishment of a known right. Udevco, Inc. v. Wagner, 678 P.2d 679, 682 (Nev. 1984). Waiver can be express or implied. Id. Whether there has been a waiver is a question for the trier of facts. See Mahban v. MGM Grand Hotels, Inc., 691 P.2d 421, 424 (Nev. 1984) (internal citations omitted). But where the circumstances are admitted, or clearly established, waiver becomes a question of law. See Henningsen v. Tonopah & G.R. Co., 111 P. 36, 47 (Nev. 1910). In order to be effective, a waiver must occur with full knowledge of all material facts. Friendly Irishman, Inc. v. Ronnow, 330 P.2d 497, 499 (Nev. 1958). A party cannot waive something unknown to her. Santino v. Great Am. Ins. Co. of New York, 9 P.2d 1000, 1004 (Nev. 1932).

The plain language of this agreement is clear: it constitutes a "full and final" resolution of Plaintiff's claims. The release is general, including no exceptions. Plaintiff did not reserve a right

to raise future claims, unknown claims, or other claims. See e.g., Chwialkowski v. Sachs, 834 P.2d 405, 406 (Nev.1992) (finding a plaintiff released her entire claim because there was no limiting language in the settlement language). Plaintiff's counsel did not communicate an alleged intent that the release be limited to only certain injuries. Instead, he accepted payment in return for a "full and final resolution." Even if Plaintiff had other injuries for which she had not been compensated, the agreement is still effective.

Furthermore, Plaintiff waived her right to future benefits arising out of this accident. The circumstances, like Plaintiff's knowledge of her knee injury, are undisputed facts. She received medical care for her knee injury for months before she entered into the agreement with Defendant. She still agreed that the $180,000 would result in a "full and final resolution" of the claim.

In sum, the parties entered into a valid and enforceable contract. There was no mutual mistake. Plaintiff waived her right to bring further claims arising out of this incident as she was aware of her knee injury before entering into the contract with Defendant, where she received $180,000 in exchange for a "full and final" resolution of her claim. Therefore, the Court grants Defendant's motion for summary judgment.

## V.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant Hartford Insurance Company of the Midwest's Motion for Summary Judgement, (ECF No. 73), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Judgment on the Pleadings, (ECF No. 74), is **DENIED** as moot.

The Clerk of Court is instructed to close this case.

**DATED:** March 28, 2025.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**